**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| RODELWIN DEL CARMEN FREITES ESPINOZA | ) | Case No. |
| | ) | |
| Petitioner, | ) | |
| | ) | **PETITION FOR WRIT OF** |
| v. | ) | **HABEAS CORPUS** |
| | ) | |
| PATRICIA HYDE; PAMELA BONDI, U.S. | ) | |
| Attorney General; TODD LYONS, Acting | ) | |
| Director U.S. Immigrations and Customs | ) | |
| Enforcement; KRISTI NOEM, U.S. Secretary | ) | |
| of Homeland Security; and ANTONE MONIZ, | ) | |
| Superintendent of Plymouth County Correctional | ) | |
| Facility, | ) | |
| | ) | |
| Respondents. | ) | |

## INTRODUCTION

1. Petitioner Rodelwin Del Carmen Freites-Espinoza ("Rodelwin") is a twenty-six year-old gay Venezuelan citizen. He is married to Irvin Alejandro Mundaray Patino ("Irvin") who is also a Venezuelan citizen and in the custody of Immigration & Customs Enforcement ("ICE") at the Federal Correctional Center in Berlin, NH ("FCI-Berlin"). Both Rodelwin and Irvin filed asylum applications in August 2024; they were both detained in April 2025 and placed in expedited removal proceedings. They both passed credible fear interviews in May 2025. Irvin was thereafter placed in removal proceedings and transferred to FCI Berlin. Rodelwin, however, has been detained at the Plymouth County Correctional Facility in Plymouth, MA since April 2025 and Respondents have failed to file his Notice to Appear with the Immigration Court thereby giving him the opportunity to pursue his asylum claim before an Immigration Judge.

2. Respondents have failed to provide Rodelwin with a copy of his credible fear interview result, in addition to failing to provide him with an opportunity to pursue his asylum claim before the Immigration Judge. Respondents, have however, notified undersigned counsel that Rodelwin passed his Credible Fear Interview. On May 30, 2025, Rodelwin learned that he is imminently going to be removed from the Plymouth County Correctional Facility and believes he may be removed from the United States.

3. Accordingly, to remedy the violation of Petitioner's statutory and Due Process rights, this Court should grant the instant petition for a writ of habeas corpus.

4. Petitioner asks this Court to find that Rodelwin is unlawfully detained and order his release.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal questions), 1651 (all writs act), 2241 (habeas corpus), and 5 U.S.C. §§ 702, 706 (review of agency action). Sovereign immunity against actions for relief other than money damages is waived pursuant to 5 U.S.C. § 702.

6. This Court may grant relief under 28 U.S.C. §§ 2241, 2243 and 8 U.S.C. 1252(e)(2) (habeas corpus), 28 U.S.C. §§ 2201-02 (declaratory relief), 28 U.S.C. § 1651 (all writs act), 5 U.S.C. § 702 (judgment against U.S. officers), Federal Rule of Civil Procedure 65 (injunctive relief), as well as the Fifth Amendment to the U.S. Constitution.

7. Venue is proper because Petitioner is detained in Plymouth, MA, in the District of Massachusetts, and a substantial part of the events or omissions giving rise to Petitioner's claims occurred in this district.

## LEGAL AND PROCEDURAL BACKGROUND

**I. Detention Pending Removal Proceedings**

**A. Initial Apprehension and Referral to Immigration Court**

8. To remove an allegedly deportable or inadmissible noncitizen from the United States, the government must, with some exceptions, initiate a removal proceeding before an immigration judge under section 240 of the Immigration and Naturalization Act (INA). 8 U.S.C. § 1229a(a). A removal proceeding begins when an authorized agent of DHS files a Notice to Appear with the immigration court operated by EOIR. *See* 8 C.F.R. §§ 2.1, 239.1(a), 1239.1. ICE and U.S. Customs and Border Protection are the two main agencies within DHS that are authorized to initiate removal proceedings. *See* 8 C.F.R. § 239.1.

9. Congress has authorized DHS to initially take an alleged non-citizen into custody without a warrant (1) if the individual enters or attempts to enter the United States in violation of the immigration laws in the officer's presence or view, or (2) if the officer reasonably believes the individual is in the United States in violation of the immigration laws and is likely to escape before an arrest warrant can be obtained. 8 U.S.C. § 1357(a)(2).

10. However, after 48 hours DHS must determine whether to continue to keep the person in custody and issue a Notice to Appear. 8 C.F.R. § 287.3(d). DHS also purports to have authority under applicable regulations to arrest and take into custody an alleged non-citizen pursuant to an administrative warrant "at the time of issuance of the Notice to Appear, or at any time thereafter." 8 C.F.R. § 1236.1(b). DHS policy and practice is that its agents and officers need not obtain a judicial warrant prior to arrest or a judicial finding of probable cause after arrest.

11. Typically, individuals arriving at a port of entry and seeking asylum take a slightly different procedural route before DHS issues them a Notice to Appear. DHS would process them for so-called "expedited removal," for which a hearing before an immigration judge is allowed in very limited circumstances. 8 U.S.C. § 1225(b)(1)(A); 8 C.F.R. §§ 235.3(b)(2)(ii), (b)(5)(iv). The Trump Administration has expanded expedited removal to apply to noncitizens (1) anywhere in the United States, (2) who cannot prove they have resided in the U.S. for at least two years will be subject to an expedited deportation process.

12. When an individual subject to expedited removal expresses a fear of persecution if removed, expedited removal is not permitted, and he or she is referred for a credible fear interview before an asylum officer with United States Citizenship and Immigration Services. 8 C.F.R. § 235.3(b)(4). If the asylum officer determines that the individual has a credible fear, then the case is referred to the Immigration Court through the issuance and filing of the Notice to Appear. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 235.6(a)(1)(ii). At that point, the case proceeds under section 240 of the INA like any other removal proceeding. 8 C.F.R. § 208.30(f).

**B. Initial Master Calendar Hearing**

13. All individuals detained pending removal proceeding are entitled to the same rights and procedures under the INA. *See generally* 8 U.S.C. § 1229a.

14. A removal proceeding commences when DHS files the Notice to Appear with the Immigration Court. 8 C.F.R. § 1003.14. The Notice to Appear provides the time, place and date of the initial hearing in removal proceedings, also called an initial Master Calendar Hearing, where practicable. 8 C.F.R. § 1003.18(b). If the Notice to Appear does not contain this information, the Immigration Court schedules the initial Master Calendar

Hearing and provides notice to the government and the alleged noncitizen as to its time, place, and date. *Id.*

15. Applicable regulations require that "the removal hearing be completed as promptly as possible." 8 C.F.R. § 1239.2(f). In addition, cases involving detained individuals must proceed on an expedited docket. *See* 8 U.S.C. § 1229(d)(1) ("In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction."); 8 C.F.R. § 1208.5(a) (requiring that, for detained asylum seekers, "[w]here possible, expedited consideration shall be given to applications of detained aliens"); Immigration Court Practice Manual, Chapter 9.1(e).[1]

16. "[T]he Master Calendar is the pre-trial docket." IJ Benchbook, Introduction to the Master Calendar at 1.[2]

17. Because it "may take more than one master calendar session to get a case ready," *id.*, a series of Master Calendar Hearings may be held to narrow the issues in a removal proceedings, until a final hearing is held to decide removability and, if applicable, eligibility for relief from removal.

18. On information and belief, EOIR, which operates the Immigration Court, is made aware when a Notice to Appear is filed whether the case involves a detained individual or a non-detained individual. On information and belief, when EOIR receives a Notice to Appear, a clerk enters the information into the court's computer system and generates a hearing date for the next available hearing. If the case involves a detained individual,

---

[1] https://www.justice.gov/eoir/office-chief-immigration-judge-0.
[2] https://www.justice.gov/sites/default/files/eoir/legacy/2014/08/15/Purpose_and_History_of_MC.pdf.

EOIR puts the case on the Immigration Court's detained docket, which is more expedited than its non-detained docket. However, EOIR does not schedule more expeditious initial Master Calendar Hearings for detainees than it does for subsequent Master Calendar Hearings for detainees. As a result, EOIR ordinarily sets the initial Master Calendar Hearing for detained immigration cases in the District of Massachusetts for one to two months after receiving the Notice to Appear.

19. The initial Master Calendar Hearing is a crucial stage of removal proceedings. It is the first time a neutral adjudicator (the immigration judge) explains the nature of the removal hearing, the contents of the Notice to Appear "in nontechnical language," the right to representation at his or her own expense, and the availability of pro bono legal services. 8 C.F.R. § 1240.10(a). The immigration judge also notifies detainees about the right to see the government's evidence against them and provides the first opportunity to request that evidence. *Id.*; *see also Dent v. Holder*, 627 F.3d 365, 374 (9th Cir. 2010); 8 U.S.C. § 1229a(c)(2)(B). The immigration judge explains these things in the noncitizen's own language, with the aid of an interpreter. *See* Immigration Court Practice Manual, Chapter 4.15(f) ("If necessary, an interpreter is provided to an alien whose command of the English language is inadequate to fully understand and participate in the hearing."). This differs from the Notice to Appear alone, which consists largely of technical legalese in English and thus would not be understandable to someone who is not versed in immigration law or does not read English.

20. The initial Master Calendar Hearing also provides the first opportunity for the immigration judge to verify service of the Notice to Appear, provide the Notice to Appear if service was not made, to examine the Notice to Appear for defects, and

demand correction of those defects. *See* IJ Benchbook, Introduction to the Master Calendar at 3 ("The NTA is not prepared by lawyers and there will be errors.").

21. Importantly, at the initial Master Calendar Hearing, unrepresented detainees who do not speak or write English may, for the first time, request a bond hearing with the aid of an interpreter in their native language. *See* 8 C.F.R. §§ 1003.19(b), (c) (stating that bond hearings may be requested "orally [in court], in writing, or, at the discretion of the Immigration Judge, by telephone … to the Immigration Court having jurisdiction over the place of detention"); *see* 8 C.F.R. § 1003.33 (requiring immigration court documents to be filed in the English language); Immigration Court Practice Manual, Chapter 4.15(f). Following the request, the Immigration Judge must schedule the bond hearing at "the earliest possible date." *See* Immigration Court Practice Manual, Chapter 9.3(d). For those detainees supposedly ineligible for bond hearings because DHS alleges they are held pursuant to so-called "mandatory detention" authority, the initial Master Calendar Hearing provides the first meaningful time they may request a hearing to challenge the applicability of that authority to their case. *See In re Joseph*, 22 I. & N. Dec. 799, 800 (BIA 1999); *Tijani v. Willis*, 430 F.3d 1241, 1246-47 (9th Cir. 2005) (Tashima, J., concurring).

22. At the initial Master Calendar Hearing, the immigration judge may identify several forms of relief for which the detainee may be eligible, allowing the detainee to begin working on his or her case after the hearing. For unrepresented individuals, the judge must assist the detainee in doing so. *See Agyeman v. INS*, 296 F.3d 871, 883-84 (9th Cir. 2002) (explaining the immigration judge "has a duty to fully develop the record when an alien proceeds pro se by probing into relevant facts and by providing appropriate guidance as

to how the alien may prove his application for relief"). This is crucial in detained cases, as individuals "may have limited access to relevant documents and will, therefore, depend even more heavily on the [immigration judge] for assistance in identifying appropriate sources of evidence to support his claim." *Id.*

## II. Due Process Rights of Detainees

23. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be … deprived of life, liberty, or property, without due process of law." Under the Due Process Clause, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 748, 755 (1987). Detention "for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

24. For immigration detainees, as with other civil detainees, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Although immigration authorities "may intercept individual aliens and subject them to hearings for the purpose of determining whether they are deportable and restrain them of their liberties for enforced deportation after hearing, . . . detention for long and unreasonable periods before hearing is illegal." *Carlson v. Landon*, 186 F.2d 183, 186 (9th Cir. 1950).

25. "The first appearance has such great value in protecting numerous rights that its denial presumptively disrupts those rights. Therefore, as a matter of constitutional prophylaxis, the denial of a first appearance offends the Due Process Clause." *Armstrong v. Squadrito*, 152 F.3d 564, 573 (7th Cir. 1998).

8

**A. Procedural Due Process Requires Prompt Post-Arrest Hearing**

26. The Due Process Clause usually "requires . . . a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). If a pre-arrest hearing is not viable, due process mandates a "prompt post-deprivation hearing at which some showing of the probable validity of the deprivation must be made." *Comm'r of Internal Revenue v. Shapiro*, 424 U.S. 614, 629 (1976). Therefore, "[p]romptness is the touchstone" of due process "analysis into the timeliness of post-deprivation review." *Jordan v. Jackson*, 15 F.3d 333, 349 (4th Cir. 1994). *See also United States v. Tejada*, 255 F.3d 1, 4 & n. 6 (1ˢᵗ Cir. 2001) (recognizing delay in presenting arrestee to magistrate judge may "effect[] a constitutional deprivation").

27. To determine if a post-arrest hearing is sufficiently prompt to satisfy the Due Process Clause, courts consider three distinct factors: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

28. Under this framework, the current delay in presenting Petitioner to an immigration judge violates due process because (1) the individual's interest in freedom from restraint is paramount; (2) the risk of erroneous detention is significant when an initial appearance is not promptly provided, and a prompt hearing would significantly reduce that risk; and (3) the government has no legitimate interest in delaying first appearance before an immigration judge, and any burdens in ensuring a prompt appearance cannot defeat the

right to a prompt hearing given the deprivation of liberty. *See Cancino Castellar v. McAleenan*, 388 F. Supp.3d 1218 (S.D. Cal. 2019) (substantive and procedural due process require prompt presentment in immigration context).

29. ICE knows that is delay in filing Notices to Appear in Immigration Court is unlawful. It settled a similar claim in the Southern District of California by agreeing that, for detainees in that district, ICE must file the NTA within 72 hours after arrest and must provide detainees in that district with initial hearings within 11 days after arrest. *See* Settlement Agreement and Release (D.E. 242-2), *Cancino Castellar v. Mayorkas*, C.A. 17-491 (S.D. Cal.).[3]

## PARTIES

30. The Petitioner, Rodelwin Del Carmen Freites-Espinoza, is a citizen of Venezuela who has established a credible fear of being removed to Venezuela. He is a gay man who is legally married to Irvin Alejandro Mundaray Patino, also a Venezuelan citizen, who is currently in the custody of ICE at FCI Berlin.

31. Respondent Patricia Hyde is the Acting Director of the Boston Field Office for Immigration & Customs Enforcement/Enforcement & Removal Operations at 1000 District Avenue, Burlington, MA 01803.

32. Respondent Pamela Bondi is the U.S. Attorney General at the U.S. Department of Justice, which is a cabinet-level department of the U.S. government.

33. Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement ("ICE") and is responsible for ICE's policies, practices, and procedures,

---

[3] Publicly available at https://www.aclu-sdic.org/sites/default/files/field_documents/2024_01_18_242-2_bv_decl_ex_a_-_settlement_agreement.pdf.

including those relating to the detention of noncitizens during their removal procedures.

34. Respondent Kristi Noem is the U.S. Secretary of Homeland Security and is responsible for the administration of the immigration laws pursuant to 8 U.S.C. § 1103.

35. Respondent Antone Moniz is the Superintendent of Plymouth County Correctional Facility and has immediate physical custody of the Petitioner pursuant to the facility's contract with the DHS to detain noncitizens and is a legal custodian of the Petitioner.

36. All respondents are named and sued in their official capacities.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

37. Petitioner Rodelwin Del Carmen Freites Espinoza was born on January 14, 1999 in Venezuela.

38. In 2023, Rodelwin traveled to the United States to seek protection from persecution directed at him based on his sexual orientation and political opinion. On or about August 23, 2023, Rodelwin entered the U.S. with his now-husband Irvin Alejandro Mundaray Patino

39. ICE officials issued Rodelwin an Order of Release on Recognizance on September 25, 2023. He was issued a Form I-862 Notice to Appear charging him as "an alien present in the United States who has not been admitted or paroled," and placing him in removal proceedings under INA § 240 (8 U.S.C. § 1229a). *See id.*

40. On or about August 30, 2023, DHS docketed Rodelwin's Notice to Appear with the Immigration Court, and he thereafter submitted his I-589, Application for Asylum and Withholding of Removal.

41. On or about June 28, 2024, Rodelwin and Irvin were legal married in Worcester, Massachusetts. *See* Exhibit C. Upon information and belief, Rodelwin and Irvin's cases

were designated to proceed together in the Immigration Court.

42. On or about April 16, 2025, Rodelwin and Irvin were placed in the Respondents' custody at the Plymouth County Correctional Facility in Plymouth, MA.

43. On or about April 25, 2025, Rodelwin and Irvin were given and passed credible fear interviews establishing a basis to seek fear-based immigration relief through the Immigration Court. *See* Exhibit A.

44. Thereafter, DHS served Irvin with a copy of his credible fear interview transcript. Exhibit B. The transcript reflects that Rodelwin, as Irvin's husband, would be included in the credible fear claim. *Id.* at 6. DHS never served Rodelwin with a copy of his own credible fear interview summary or result. However, undersigned counsel was notified that he passed his interview. Exhibit A.

45. On or about May 6, 2025, the Immigration Court granted DHS's Motions to Dismiss Rodelwin's and Irvin's removal proceedings, and DHS placed Rodelwin and Irvin in expedited removal pursuant to 8 C.F.R. § 235.3, even though they had already received and passed their credible fear interviews.

46. On or about May 14, 2025, DHS filed a Notice to Appear for Irvin with the Chelmsford Immigration Court thereby giving him the opportunity to pursue his claim for asylum, withholding of removal, and protection under the Convention Against Torture.

47. Two days later, on May 16, 2025, Respondents transferred Irvin's custody to FCI Berlin.

48. To this date, DHS has never filed a Notice to Appear for Rodelwin. Rodelwin has been detained at the Plymouth County Correctional Facility in Plymouth, MA since April 16, 2025 without having an opportunity to present his claim for asylum in the Immigration Court following the positive credible fear result.

49. On May 23, 2025, Irvin moved to consolidate his and Rodelwin's cases with the Immigration Court. On May 27, 2025, the Immigration Judge denied the motion because DHS has not yet filed a Notice to Appear for Rodelwin with the Court. *See* Exhibit D.

50. On May 30, 2025, Rodelwin received notice, upon information and belief, that he is imminently going to be transferred away from the Plymouth County Correctional Facility and may be removed.

51. DHS has been detaining Rodelwin for an extended period of time without promptly presenting him for an initial hearing before an immigration judge. DHS has separated Rodelwin and Irvin forcing them to proceed with their cases separately, even though they are both in Respondents' custody, they are legally married, and they are included in each other's credible fear claims. DHS has failed to serve Rodelwin with a copy of his own credible fear interview summary and result. Rodelwin has been languishing in the Plymouth County Correctional Facility since April 2025 without being permitted to continue to pursue his fear-based claim for immigration relief.

52. After DHS transferred Irvin to FCI Berlin, Rodelwin was distraught. When he expressed his distress to detention officials, they isolated him in solitary confinement. Rodelwin has since fallen ill with the flu in the wake of this trauma and has not received adequate medical attention from Respondents. As a survivor of severe trauma at the hands of government officials in Venezuela, Rodelwin's mental state is rapidly deteriorating in a carceral setting far from his spouse.

53. The requirement of prompt presentation after arrest "stretches back to the common law, when it was one of the most important protections against unlawful arrest." *Corley v. United States*, 556 U.S. 303, 320 (2009). Excessive delays in judicial presentment

deprive immigration detainees of due process, prevent them from exercising important rights and remedies, impede the progress of removal proceedings – particularly in this case where Rodelwin's removal proceedings were dismissed and refiled, and bear no reasonable relation to a valid purpose.

54. The first hearing before an immigration judge, like the first appearance in criminal court, is critical to ensuring due process. For example, it ensures that a detainee can learn the charge against them; receive important advisals about their rights; contest threshold allegations about their status and custody, or bond; request the evidence that the government intends to use against them; and improve their chances of securing pro bono counsel. The current delay in providing Rodelwin with his first appearance has prevented him from receiving these important protections and advisals in a timely manner and it is unreasonably extending his period of detention.

55. Respondents' treatment of Rodelwin has resulted in an unreasonable and extended detention for Rodelwin without prompt presentment to a judge. Therefore, Rodelwin seeks declaratory, injunctive, and habeas corpus relief that will prevent Respondents from continuing to detain Rodelwin for an unreasonable period of time before present to a judge.

56. Respondents' potential transfer or removal of Rodelwin outside of Massachusetts will interfere with Rodelwin's ability to pursue immigration relief with his husband in a consolidated action, continue to access pro bono immigration counsel, and to respond to and resolve any open criminal charges in Massachusetts.

57. Rodelwin is now in custody at the Plymouth County Correctional Facility in the District of Massachusetts, and one or more of the Respondents is his immediate custodian.

## CLAIMS FOR RELIEF

### COUNT ONE
### Violation of Due Process of the Fifth Amendment of the United States Constitution

58. Petitioner repeats and realleges all the allegations above and incorporate them by reference here.

59. The Due Process Clause of the Fifth Amendment to the U.S. Constitution provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.

60.  The Due Process Clause does not permit the government to detain Petitioner without promptly presenting him before a judge.

61. Respondents' policies, practices, acts, and omissions as to Petitioner violates the procedural component of the Due Process Clause by causing the detention of Petitioner without prompt judicial presentment.

62. Respondents' policies, practices, acts, and omissions as to Petitioner violate the substantive component of the Due Process Clause by causing the detention of Petitioner without prompt judicial presentment.

63. As a proximate result of Respondents' violations of the Due Process Clause, Petitioner is suffering and will continue to suffer a significant deprivation of his liberty without due process of law. Petitioner has no plain, adequate or complete remedy at law to address the wrongs described herein. The relief sought by Petitioner is necessary to prevent continued and future irreparable injury.

**COUNT TWO**
**Violation of 5 U.S.C. §§ 702, 706(1), (2)(A)-(D)**

64. Petitioner repeats and realleges all the allegations above and incorporates them by reference here.

65. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

66. The Administrative Procedure Act further provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law." 5 U.S.C §§ 706(1), (2)(A)-(D).

67. Respondents' policies, practices, acts, or omissions as described herein and as to Petitioner are final agency actions that are (A) arbitrary and capricious, and inconsistent with the purposes and concerns of relevant statutes or laws, (B) contrary to constitutional right, power, privilege or immunity, (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, and/or (D) without observance of procedure required by law, in violation of 5 U.S.C. §§ 702, 706(1), (2)(A)-(D).

68. As a proximate result of Respondents' violations of the Administrative Procedure Act, Petitioner is suffering and will continue to suffer a significant deprivation of his liberty and denial of the rights, privileges, and procedures afforded him under the Constitution and the INA. Petitioner has no plain, adequate or complete remedy at law to address the

16

wrongs described herein. The relief sought by Petitioner is necessary to prevent continued and future irreparable injury.

69. For at least these reasons, Petitioner has been aggrieved by the Respondents under the Administrative Procedures Act.

## **PRAYER FOR RELIEF**

Wherefore, Petitioner respectfully requests this Court grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Massachusetts;

(3) Declare that the Petitioner's detention violates Procedural and Substantive Due Process as well as the Immigration & Nationality Act and Administrative Procedure Act.

(4) Issue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately.

(5) Award Petitioner reasonable attorney's fees and costs under the Equal Access to Justice Act, and on any other basis justified under the law; and

(6) Grant any further relief this Court deems just and proper.

Respectfully submitted,

Rodelwin Del Carmen Freites-Espinoza

By his attorneys,

Dated: May 30, 2025

*Irene C. Freidel*

Irene C. Freidel
BBO# 559051
Political Asylum/Immigration
Representation (PAIR) Project
98 North Washington St, Ste. 106
Boston, MA 02114
(617) 947-6349
ifreidel@pairproject.org

17

_____
Daniela N. Hargus
BBO# 711041
Political Asylum/Immigration
Representation (PAIR) Project
98 North Washington St, Ste. 106
Boston, MA 02114
(978) 502-7448
dhargus@pairproject.org

## CERTIFICATE OF SERVICE

I, Irene C. Freidel, hereby certify that this document filed through the ECF system will be sent

electronically to the Respondents who are registered ECF participants as identified on the Notice

of Electronic Filing (NEF)


Dated: <u>May 30, 2025</u>

_Irene C. Freidel_
_____
Irene C. Freidel